**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

**HENRY BONGES**

***Plaintiff,***

**v.**

**TOWN OF MILTON and CHRIS TAYLOR, in his official capacity as Milton Town Manager**

***Defendants.***

**Civil Action No. 2:26-cv-283**

**COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Vermonters have a long history of volunteering on local governmental boards regardless of political ideology. Town of Milton officials, however, forced Plaintiff Henry Bonges ("Bonges") out of his long-held volunteer positions because he advocated environmental protectionism in his personal capacity. Beyond subverting Vermont's tradition, Defendants' actions violated Bonges' free speech rights.

2. The fire-able offense? On April 17, 2025, Bonges emailed his state representatives, urging them to support climate legislation pending before the Vermont Legislature. A few weeks later, the Milton Selectboard meeting, some of whose members who received Bonges' personal email—because they are also Milton's state representatives—pressured Bonges to withdraw his application for long-held volunteer positions and refused to advance his nominations.

3. They voiced only one reason for forcing him out: his email urging them, as his state

representatives to support environmental protectionism.

4. Bonges acquiesced and withdrew several applications. But he refused to step down from the Chittenden Solid Waste District Board ("CSWD").

5. In response, the Town fired Bonges from the CSWD board.

6. The Town's actions ignored the First Amendment's protection of public servants speaking in their personal capacities*, see Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), public officials cannot retaliate against government volunteers for personal political speech that presents no conflict for their government service*, see Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 557 (2d Cir. 2001) (applying First Amendment retaliation protections to volunteers); *see also Barton v. Clancy*, 632 F.3d 9, 25–26 (1st Cir. 2011) (noting that "no court has held that volunteers are not protected by the First Amendment").

7. Milton did exactly that– violating Bonges' freedom of speech.

## PARTIES

***Plaintiff***

8. Henery Bonges is a resident of Milton, Vermont. Before Milton ousted him, Bonges represented Milton on the Milton Planning Commission and the Chittenden Solid Waste District Board, and as an alternate representative for Milton's Regional Planning Commission Board of Directors.

9. Bonges served the Town of Milton as a volunteer for decades.

10. Bonges' educational and employment background is in environmental sustainability.

***Defendants***

11. Defendant Town of Milton is a municipality located in Chittenden County, in the State of Vermont, with administrative offices at 43 Bombardier Road, Milton, Vermont 05468. At

all times relevant to this suit, Milton was and is a "person" acting under color of law for purposes of 42 U.S.C. § 1983.

12. Defendant Chris Taylor is the Milton Town Manager. In his role, he is responsible for executing the hiring, firing, promoting, and disciplining volunteers on Milton's various board positions. At all times relevant to this suit, Town Manager Chris Taylor was and is a "person" acting under color of law for purposes of 42 U.S.C. § 1983. He is sued in his official capacity.

**JURISDICTION AND VENUE**

13. This Court has original subject matter jurisdiction under the Constitution of the United States of America, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

14. This Court has supplemental jurisdiction over the Vermont State Constitution Article 13 claim pursuant to 28 U.S.C. § 1367.

15. Declaratory relief is authorized by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

16. This Court has personal jurisdiction over Milton because it is a local government entity of the state of Vermont and resides in this Judicial District.

17. This Court has personal jurisdiction over Defendant Taylor because, on information and belief, he resides in the State of Vermont and this Judicial District.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the parties are residents of and all events giving rise to this action occurred in this Judicial District.

19. At all times relevant, the Town of Milton, through its Selectboard, maintained policies and exercised authority governing the appointment and removal of volunteer-representatives to municipal boards, commissions, and regional entities.

## FACTUAL ALLEGATIONS

**A. Bonges Volunteered for Milton for Decades.**

20. Before his termination, Bonges dedicated more than twenty years to representing Milton on seven local boards and commissions between the early 2000s and 2025.

21. For ten years, Bonges volunteered as Chairman of the Milton Town Energy Committee.

22. From 2022 to 2025, Bonges served as the Town's representative to the Chittenden Solid Waste District.

23. From 2013 to 2017, Bonges served as a volunteer member of the Town of Milton Planning Commission.

24. From 2015 to 2022, Bonges served as a member of the Chittenden County Regional Planning Commission.

25. From 2014 to 2023, Bonges served as a member of the Town's Design Review Board.

**B. Bonges Sends a Personal Email to His State Representatives Advocating Environmental Protectionism.**

26. During the 2025 legislative session, state lawmakers proposed to repeal provisions of Act 153, known as the Global Warming Solutions Act.

27. In response, the Vermont Public Interest Research Group ("VPIRG") sent out an action alert email to the members of their listserv, including Bonges, requesting they email their state legislators asking them to support Act 153.

28. On April 17, 2025, Bonges emailed his state legislators, including Brenda Steady, Leland Morgan, Michael Morgan, and Chris Taylor, advocating support for Act 153.

29. Vermont House Representatives Brenda Steady, Leland Morgan, Michael Morgan, and Chris Taylor were also Milton Selectboard members at that time.

30. Brenda Steady, Leland Morgan, and Michael Morgan are still members of the Milton Selectboard.

31. On May 25, 2025, Representative Chris Taylor resigned from the Milton Selectboard and became Milton's town manager.

32. The subject line of Bonges' email reads: "Please support Global Warming Solutions Act (Act 153) and Climate Superfund."

33. Bonges' email called on his state representatives to not repeal the provision in Act 153 and to enact environmental protection legislation.

34. Bonges emailed his state representatives as a private citizen.

35. Bonges sent his email from his personal email account.

36. Bonges' email did not conflict with his official duties on behalf of Milton.

37. Rather, his email addressed a matter of political and social concern.

38. Bonges did not send his email as part of responsibilities associated with his Milton volunteer positions.

39. Bonges volunteer roles did not include lobbying or advising legislators on pending state policies.

40. Bonges' email addressed statewide climate legislation over which the Town of Milton possessed no decision-making authority.

41. Defendants did not substantively respond to Bonges' email.

**C. The Town Retaliated Against Bonges for His Political Speech.**

42. During that same time, Bonges sought the Milton Selectboard's reappointment to three volunteer posts: the Town of Milton Planning Commission ("PC"), the Regional Planning Commission ("RPC") Board of Directors' Alternate, and the Chittenden Solid Waste District ("CSWD") Board Representative.

On May 19, 2025, Selectboard member Chris Taylor made a motion to reappoint Bonges with a second from Selectboard member Michael Morgan.

43. Selectboard member Leland Morgan questioned whether to reappoint Bonges, explicitly referencing his April 17 email: "You've made it very public that you hold at least four of the five of us in high disdain. It makes me wonder whether you could do a good job for us with the feelings that you have toward us."

44. Selectboard member Darren Adams piled on, asking: "When you make a vote [for] the Chittenden Solid Waste District, whose opinion are you expressing, the Board's… or your opinion?"

45. Bonges responded to Adams' questions—reassuring the Board that he kept politics out of his official duties—by stating, "If there was an issue…where the board had made their feelings known ahead of time… I would express what the board told me to do."

46. State Representative and Selectboard member Leland Morgan then demanded Bonges relinquish his nomination: "I personally . . . would like to see [Bonges] withdraw [his] application before we even vote on it – and then [the Selectboard] can publish that we have an opening and talk to various applicants."

47. State Representative and Selectboard member Brenda Steady also stated her opposition to Bonges' reappointment, by explicitly referencing his April 17: "When I received your email, I was disheartened."

48. Bonges acquiesced to the Selectboard's pressure and withdrew his applications, stating: "Leland wants me to withdraw, I will withdraw, but then I will reapply . . . if you want to have someone else in there, that's your call."

49. At the June 2 Selectboard meeting, Bonges objected on the record to the Selectboard members' pressure, noting he sent his April 17 email in his personal capacity.

50. At the July 7 Selectboard meeting, Bonges again sought nominations for reappointment to the RPC, the PC, and the CSWD.

51. The Selectboard did not support his reappointments, removing him from positions without identifying any legitimate, performance-based reason.

**D. Defendants Terminated Bonges from the CSWD.**

52. On July 8, Bonges emailed the Selectboard and Defendant Chris Taylor, pointing out that the CSWD Charter required him to continue as Milton's CSWD representative until replacement, removal, or resignation. *See* CSWD Charter, Art. II, Sec. 7.

53. Bonges told Defendants he would not resign and requested the Town notify him if they chose to remove or replace him.

54. On August 4, the Selectboard appointed a new CSWD Board Representative, Betsy Paret, officially terminating Bonges from the CSWD position.

55. Defendant Chris Taylor, as Town Manager, directed and exercised his authority to replace Bonges as Milton's CSWD representative.

**E. The Selectboard is the Final Policymaker for Volunteer Appointment and Removal Decisions Under Milton's Town Charter.**

56. At all times relevant, the Milton Selectboard possessed final policymaking authority with respect to the appointment and removal of members of Town boards, commissions, and similar bodies.

57. Pursuant to the Milton Town Charter, the Selectboard "shall . . . appoint and remove members of all boards, commissions, committees, or similar bodies." 24 App. V.S.A. ch. 129, § 304(3).

58. This authority is mandatory, final, and unreviewable within the Town's governmental structure, and no other Town official possesses authority to override or countermand

the Selectboard's decisions in this domain.

59. Accordingly, Selectboard decisions regarding volunteer appointments and removals constitute official municipal policy for purposes of 42 U.S.C. §1983.

60. Milton's Selectboard exercised its authority under 24 App. V.S.A. ch. 129, § 304(3) to force Bonges to revoke applications, deny his nominations, and remove him from the CSWD.

61. The Selectboard members' statements, made during the formal exercise of its charter-granted authority, demonstrate that Bonges' protected speech was a substantial motivating factor in their official decision to deny his reappointment and remove him.

62. Whether through formal vote, denial, or replacement, the Milton Selectboard's final authority and official policy was the moving force in the violation of Bonges' free speech rights under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**FIRST CAUSE OF ACTION**
**FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983**
**(All Defendants)**

63. Bonges re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

64. Under the First Amendment it is axiomatic that "The government must abstain from regulating speech when the specific motivating ideology or the opinion or the perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

65. The First Amendment prohibits public entities from "condition[ing] public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983).

66. The First Amendment similarly prohibits public officials from retaliating against volunteers for personal political speech. *See Gorman-Bakos v. Cornell Co-op Extension of*

*Schenectady Cty.*, 252 F.3d 545, 557 (2d Cir. 2001) (applying First Amendment retaliation protections to volunteers); *see also Barton v. Clancy*, 632 F.3d 9, 25–26 (1st Cir. 2011) (noting that "no court has held that volunteers are not protected by the First Amendment").

67. Bonges' April 17, 2025 email to his state representatives is protected speech under the First Amendment.

68. Bonges' email is speech on a matter of public concern.

69. Bonges' email is speech in his personal capacity.

70. Bonges' email is not speech made in his capacity as a Milton volunteer or representative.

71. Bonges' interest in commenting upon matters of public concern and petitioning his state representatives outweighs Defendants' interests, if any, in promoting the efficiency of its public services.

72. Defendants took adverse government action against Bonges by pressuring him to revoke his applications, denying his reappointments, and terminating him from the CSWD.

73. Defendants retaliated against Bonges for his protected speech by pressuring Bonges to revoke his nominations, denying his reappointments to the RPC and PC, and terminating him from the CSWD.

74. The Town of Milton's official policy—namely, the Milton Selectboard's decisions while acting as the Town's final policymaker—deprived Bonges of his First Amendment rights by pressuring him to revoke government volunteer applications, denying his reappointments, and terminating him from the CSWD position because of his protected speech.

75. Because the Selectboard is the final policymaker for such decisions under Vermont law and the Milton Town Charter, its actions and the reasoning behind them constitute official municipal policy.

76. The Selectboard's pressuring Bonges, denying his reappointments, and removing him from the CSWD position, made during official proceedings and motivated by Bonges' protected speech, were the moving force behind the violation of Bonges' constitutional rights.

77. Defendant Chris Taylor, as Town Manager, implemented and executed the decisions of the Milton Selectboard regarding Bonges' removal from the CSWD board

## SECOND CAUSE OF ACTION
## VIOLATION OF FREE SPEECH GUARANTEE OF CHAPTER I, ARTICLE 13 OF THE VERMONT CONSTITUTION
## (Town of Milton)

78. Bonges re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

79. Bonges' April 17, 2025 email is protected speech under Chapter I, Article 13 of the Vermont Constitution.

80. The Vermont Constitution safeguards the people's right to write and publish their views concerning the transactions of government without restraint.

81. Bonges' email constitutes speech concerning the transactions of government, specifically the legislative votes of his state representatives and climate change policy.

82. Bonges' interest in speaking on these issues outweighs Defendants' interests, if any, in promoting the efficiency of public services.

83. The Selectboard retaliated against Bonges for his protected speech concerning the operations of the Vermont government by pressuring Bonges to revoke his nominations, denying his reappointments, and terminating Bonges from his volunteer position at CSWD.

84. The Town of Milton's retaliation against Bonges violated Chapter I, Article 13 of the Vermont Constitution and has injured Bonges.

## PRAYER FOR RELIEF

**WHEREFORE**, Bonges respectfully prays for the following relief:

A. Declare Defendants actions violated Bonges' rights under the First Amendment to the United States Constitution and Chapter I, Article 13 of the Vermont Constitution;

B. Award monetary damages in an amount to be determined by the Court and Jury to compensate Bonges for unconstitutional interference with and infringement of his rights;

C. Award punitive damages for the Town of Milton's reckless and callous disregard for Bonges' First Amendment and Article 13 rights;

D. Award Bonges his costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. §1988; and

E. Grant any and all further relief that this Court may deem just and proper.

Respectfully submitted this 18th day of August, 2026.

By: /s/ James M. Diaz
James M. Diaz, Esq.
Darby Kolter & Roberts LLP
89 South Main Street
Waterbury, VT 05676
Phone: (802) 253-7165 ext. 103
Fax: (802) 244-5954
jay@crossroadslawvt.com

Jared K. Carter, Esq.
Kingsbury Law
P.O. Box 3061
Burlington, VT 05408
Phone: (207) 319-6050
kingsburylawoffice@gmail.com

*Counsel for Plaintiff Henry Bonges*